FILED
MAY 12 2016
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | P16CR 196 |
| v. | § | **CRIMINAL NO. P-16-CR-** |
| **GEORGE MARIADAS KURUSU** | § | **INDICTMENT** |
| | § | Wire Fraud **(18 U.S.C. 1343)** |
| | § | Fraud in Foreign Labor Contracting **(18 U.S.C. 1351)** |
| | § | Tampering with a witness, victim or an informant **(18 U.S.C. 1512(b))** |
| | § | False Swearing in Immigration Matter **(18 U.S.C. 1546)** |
| | § | **DEMAND FOR FORFEITURE** |

The Grand Jury charges that:

**Count 1**
**(Wire Fraud)**
**18 U.S.C. §1343**

**Introduction**

At all times material to this Indictment:

1. Employers may use the H-1B visa program to temporarily employ foreign workers in a specialty occupation within the United States. A specialty occupation requires the theoretical and practical application of a body of specialized knowledge and a bachelor's degree or the equivalent in a specific specialty.

2. Employers file a Labor Condition Application for Nonimmigrant Workers, ETA Form 9035, with the Department of Labor (DOL) Employment and Training Administration (ETA). In the application, the employer describes in detail the duties,

educational requirements, training, and experience that an employee must possess to perform the work for the job opportunity, recruitment efforts for U.S. workers, and the qualifications of the foreign worker. Additionally, the employer must certify that the job opportunity has been and is clearly open to any U.S. worker and that U.S. workers who applied for the job opportunity were rejected for lawful job-related reasons. An employer must prepare a recruitment report in which it categorizes the lawful job-related reasons for rejection of U.S. applicants.

3. If DOL approves the labor condition application, the foreign worker can receive a H1-B visa only if the employer submits a Form I-129, Petition for a Nonimmigrant Worker to USCIS, for that specific foreign worker. An approved Form I-129 and ETA Form 9035 allow the foreign worker to apply for an H-1B visa from the Department of State in order to work in the United States.

4. A foreign employee who obtains an H-1B visa is only allowed to work for and obtain a salary from the employer who petitioned for the H1-B visa. Title 8 Code of Federal Regulation, Section 274a.12(b)(9) states that an alien in an H1-B visa holder status may be employed *only* by the petitioner through whom the status was obtained.

<u>The Defendant:</u>

5. GEORGE MARIADAS KURUSU, an Indian national, is in the United States on an H-1B Visa employed as a teacher in the Fort Stockton Independent School District (FSISD). KURUSU is the registered owner and a director of Samaritan Educational Services [hereinafter Samaritan] in Fort Stockton, Texas.

6. On or about February 19, 2008, Defendant KURUSU became an H1-B visa holder. In or about August 2008 Defendant KURUSU became employed as a teacher at the

Fort Stockton Independent School District, in Fort Stockton, Texas, where he remains as of the date of this indictment.

**<u>The Scheme</u>**

7. SSI, an Indian national, is a teacher in the FSISD, who sought the assistance of Defendant KURUSU beginning in December 2012 to obtain employment in the United States.

8. SRI, an Indian national, was a teacher in the FSISD, who sought the assistance of Defendant KURUSU beginning in December 2012 to obtain employment in the United States.

9. Defendant KURUSU enticed SSI and SRI to hire his company on the pretext that Samaritan would find teaching jobs for the applicant and that the applicant would only have to pay processing costs for basic documentation in order to receive an H1-B visa. Defendant KURUSU stated that none of the monies collected would go to Samaritan.

10. Defendant KURUSU directed, via email, SSI and SRI how to pay Samaritan for the service of processing the paperwork that would be needed to obtain an H1-B visa. Defendant KURUSU also emailed SSI to allay any suspicions they may have about the legitimacy of Samaritan.

11. After SSI and SRI obtained their H1-B visa's, and arrived in the Fort Stockton, which is in the Western District of Texas, Pecos Division, Defendant KURUSU had SSI and SRI and others sign a contract to pay him 15% of their paycheck before taxes for "consultancy fees." SSI and SRI were advised that this fee was to ensure that they would not lose their H1-B visas while employed with the FSISD.

12. Defendant KURUSU had SSI and SRI set up an Electronic Transfer of Funds (ETF) from their bank account to a bank account in the name of Samaritan, which Defendant KURUSU was a signatory, in order to effect the collection of the 15% from SSI and SRI's paychecks without interruption.

13. From on or about December 2012, and continuing through on or about the date of this Indictment, in the Western District of Texas and elsewhere, Defendant GEORGE MARIADAS KURUSU devised and intended to devise a scheme to defraud SSI and SRI and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

**The Manner and Means**

14. It was part of the scheme that:

15. On or about June 1, 2009, Defendant KURUSU registered the business Samaritan Educational Services, LLC, with the State of Texas. Defendant KURUSU was both the registered agent and a director of this entity. Defendant KURUSU was aware that he could not lawfully work or obtain compensation in any form from Samaritan.

16. Samaritanusa@yahoo.com is the contact email address for Samaritaneducationalservices.org. The website was created on or about February 18, 2009. Defendant KURUSU is identified as the Director-Human Resources for Samaritan Educational Services and listed as the Registrant, Admin and Tech Support for the website. The address for the company is listed as Post Office Box Number 1197, Fort Stockton, Texas 79735.

17. On or about December 3, 2010, Defendant KURUSU established a partnership business bank account with First National Bank of Fort Stockton for Samaritan, in which he was a primary signatory.

18. In or around December 2012, SSI and SRI responded to a newspaper advertisement published in Hyderabad, India seeking teachers for the United States by submitting their resumes to Defendant KURUSU. Defendant KURUSU responded via email, from samaritanusa@yahoo.com, requesting proof of teaching degrees and other documentation for both SSI and SRI.

19. On or about January 7, 2013, Defendant KURUSU sent an email titled "Moving Forward Financial Aspects" to an undisclosed list of recipients including SSI, from samaritanusa@yahoo.com, advising they had made the final list and would have to complete the following steps to proceed:

    a. "1. You will be paying nearly ninety five thousand rupees now for your credential evaluation, fingerprinting, license from the state education board to work here and the certification fee This amount cannot be refunded since you will be basically applying for your certification and you will be paying for your license which will help you to work in Texas even later. You can appear for interviews from the schools through telephone or Skype only after you get the license. So if you are not interested please let us know immediately since there are another 720 teachers in the waiting list.

    b. 2. All other expenses are only after getting the job probably in the month of June and July 2013

c. 3. If you are not selected by the schools this certificate will be useful for you to work in Texas schools later also."

20. On or about January 8, 2013, Defendant KURUSU sent an email to an undisclosed list of recipients, including SSI, from samaritanusa@yahoo.com, advising, "There has been some inquiries from your relatives regarding the authenticity of the program. I understand your anxiety. I was also like you when I came over to the USA. Anyway you and your family are going to be my good friends for a long time to come so I am going to accept any friendship request by any of you in Facebook. Please feel free to send a request to Facebook to my account under the email georgekurusu@yahoo.com,"

21. On or about January 13, 2013, Defendant KURUSU sent an email to SSI, from samaritanusa@yahoo.com, instructing, "Go over to Texas Educational Agency-certification-International teachers – create an account for you and your wife Let me know the username and password for both of you." (Referring to SSI and SRI.)

22. On or about March 13, 2013, Defendant KURUSU sent an email to SSI, from samaritanusa@yahoo.com, stating, "My account number is XXXXXXXXXXXX icici bank in the name of George Mariadas Kurusu. It is an NRO account. Before crediting the money please check the number and the name correctly with the person in the counter. The account is in Taminadu The money is purely fro (sic) your certification, fingerprinting and sending correspondence to your address to make sure you get the right licenses to work here Company doesn't take anything out of it …"

23. On or about March 29, 2013, Defendant KURUSU sent an email to SSI, from samaritanusa@yahoo.com, stating, "Go to Texas Educational Agency – go to TEAL

login – then to new use account- complete all the details – login back and get your TEA user ID Mail me your user name / password and TEA ID along with the security questions and answers(.) Once you send all these details I will be able to login and get all the details and pay the fee for certification. Do the same thing for your wife also …"

24. On or about April 5, 2013, SSI sent an email to Defendant KURUSU detailing SSI and SRI's TEA login information and security questions.

25. On or about May 6, 2013, Defendant KURUSU sent an email to SSI requesting copies of degrees and certificates for SSI and SRI.

26. On or about May 27, 2013, Defendant KURUSU sent an email to SSI providing instructions on obtaining fingerprints. In his email correspondence, he instructs SSI to "send them to my address in US (George Kurusu. 1509 N. Front St, Fort Stockton, Texas, USA-79736 Ph: 432 923 3901)."

27. On or about June 26, 2013, Defendant KURUSU swore to and filed electronically a DS-160, an Online Nonimmigrant Visa Application to renew his H1-B visa. Within the application, Defendant KURUSU was asked specifically, "Have you ever sought to obtain or assist other to obtain a visa, entry into the United States, or any other United States immigration benefit by fraud or willful misrepresentation or other unlawful means." Defendant KURUSU responded to this question, "No." Defendant KURUSU also omitted the fact about his employment with Samaritan. Defendant KURUSU affirmed this attestation on July 17, 2013.

28. On or about July 6, 2013, Defendant KURUSU traveled to India. There, Defendant KURUSU met with SSI and SRI. Defendant KURUSU directed them not to mention

Samaritan Education Service or the fees being paid to Defendant KURUSU during SSI and SRI's visa interviews at the United States Consulate in Hyderabad, India. SSI and SRI had their interview on or about September 30, 2013.

29. On or about July 24, 2013, Defendant KURUSU sent an email to SSI. The e-mail stated, "Send your credential evaluation copy, Letter from all the universities stating that your certification is not cancelled and all your experience certificates showing that you were teaching in English medium to ralph.traynham@fsisd.net … Put a note in the email that I asked you to send it to Mr. Traynham. We will do the same for (SRI) after a couple of days. Donot (sic) delay. Complete it immediately." (Mr. Traynham is the superintendent at FSISD.)

30. Also on or about July 24, 2013, Defendant KURUSU sent an additional email to SSI advising, "Send a copy of all the papers you send to Mr. Tryanham (sic) to me also."

31. On or about August 5, 2013, Defendant KURUSU sent an email to SSI advising, "Donot (sic) send any further details to Mr. Traynham. As I said he was very annoyed and shot an email to me not to send details to him"

32. On or about August 12, 2013, Defendant KURUSU sent an email to SSI, requesting emails received by SSI from the Texas Education Association (TEA), be forwarded to Defendant KURUSU as soon as they are received.

33. In or about August 2013, SSI and SRI obtained their TEA certification allowing them to teach in the United States.

34. Per the March 13, 2013 email sent by Defendant KURUSU to SSI and SRI, they deposited into Defendant KURUSU's icici bank account in India a total of 323,910 rupees, approximately $5,330.00 in U.S. currency. There were five separate deposits

between August 16 and September 6, 2013. After Defendant KURUSU received this money, he only used a total of $537 of it to pay for the expenses for both SSI and SRI and pocketed the rest.

35. On or about August 21, 2013, Defendant KURUSU sent an email to SSI and an attachment with appointment letters for SSI and SRI, dated July 12, 2013.

36. On or about September 24, 2013, a DS-160, Online Nonimmigrant Visa Application, was submitted by both SSI and SRI seeking a Temporary Worker Specialty Occupation (H1-B) U.S. visa. Under the "Temporary Work Visa" section of the DS-160, both SSI and SRI listed Fort Stockton Independent School District as the "Name of Person/Company who Filed Petition" and included the application receipt/petition number received from USCIS associated with FSISD. The U.S. Contact for SSI and SRI listed Ralph Traynham, and the employer, Fort Stockton High School.

37. On or about October 2013 SSI and SRI arrived in Fort Stockton, Texas. Soon thereafter, Defendant KURUSU directed the both of them to sign a contract for consultancy fees of 15% of their paycheck before taxes. Defendant KURUSU verbally told them that he, Defendant KURUSU was their point of contact for any matters they had with the school district—they were not to contact the school district about any matters. Defendant KURUSU also expressed that the fees he was receiving was to insure that they would not have any problems with their visas.

38. Defendant KURUSU led SSI and SRI to believe and have the impression that Defendant KURUSU and Samaritan paid for and were responsible for their H1-B visas. Unbeknownst to SSI and SRI, the H1-B was paid for by FSISD as required by law.

39. On or about October 28, 2013 and November 25, 2013, Defendant KURUSU drove SSI and SRI to First National Bank of Fort Stockton to set-up an Electronic Funds Transfer (EFT) from both SSI and SRI's bank accounts, respectively, to Defendant KURUSU's/Samaritan's account at First National Bank of Fort Stockton. Each month, fifteen percent of SSI and SRI's salaries, before tax were sent EFT to Defendant KURUSU's account.

40. First National Bank of Fort Stockton utilizes a server whose software is operated out of Knoxville, Tennessee. Therefore, monies that are deposited into Defendant KURUSU /Samaritan's bank account via ETF will first travel in interstate commerce to and through the Shazaam Software Server in Knoxville, Tennessee to Defendant KURUSU's/Samaritan's bank account in Fort Stockton, Texas.

41. Between on or about October 28, 2013 to on or about December 24, 2015, Defendant KURUSU collected over $20,000 from SSI and SRI via EFT. Neither Defendant KURUSU nor Samaritan provided services to SSI and SRI during this time.

42. On or about June 25, 2015, law enforcement officials from the Department of Labor and U.S. State Department began investigating the case. Defendant KURUSU instructed SSI and SRI to not mention that they were paying Defendant KURUSU for their continued presence in the United States and instead say they were repaying a loan. Defendant KURUSU then threatened SSI and SRI that if he is deported that all of the Indian nationals will have to return to India.

43. On or about December 10, 2015, Defendant KURUSU acknowledged SSI had paid him through automatic payments $642 each month for the past 13 months. Defendant KURUSU told SSI he would speak with Superintendent Traynham and start the

application renewal process for SSI's visa. Defendant KURUSU told SSI he would start the application for permanent resident alien for SSI. SSI questioned Defendant KURUSU about the continual payments and he responded by threatening SSI that everyone, referring to the H1-B teachers, would be fired. Defendant KURUSU explained to SSI that the fees paid to him are part of the visa package even though Fort Stockton I.S.D. is the petitioner on SSI's visa.

44. On or about March 31, 2016, Defendant KURUSU demanded SSI resume payments that SSI had stopped via the ETF payments to the Defendant KURUSU. The Defendant KURUSU sternly advised SSI to pay or he would have to deal with Samaritan who will decide SSI's fate.

45. From on or about April 4, 2016 and to on or about May 2, 2016, Defendant KURUSU again pressured SSI and SRI on three occasions to make payment and advised them that if payment were not made Samaritan would take actions against SSI.

46. On or about each of the dates set forth below, in the Western District of Texas, Defendant GEORGE MARIADAS KURUSU, for the purposes of executing the scheme described above and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 1 | January 7, 2013 | E-mail re: "Moving Forward Financial Aspects" |
| 2 | January 8, 2013 | E-mail re: "Letter with details" |
| 3 | March 13, 2013 | E-mail re: "Re: Transcripts of sam" |
| 4 | October 28, 2013 | Electronic Transfer of Funds of $535.00 |
| 5 | November 25, 2013 | Electronic Transfer of Funds of $510.00 |
| 6 | March 25, 2014 | Electronic Transfer of Funds of $510.00 |
| 7 | March 25, 2014 | Electronic Transfer of Funds of $535.00 |
| 8 | August 25, 2014 | Electronic Transfer of Funds of $510.00 |
| 9 | August 25, 2014 | Electronic Transfer of Funds of $535.00 |
| 10 | November 24, 2014 | Electronic Transfer of Funds of $624.00 |
| 11 | December 24, 2015 | Electronic Transfer of Funds of $624.00 |

All in violation of Title 18, United States Code, Section 1343.

**Count 12**
**(Fraud in Foreign Labor Contracting)**
**18 U.S.C. § 1351(a)**

47. Paragraphs One through Forty-Six in Counts One through Eleven are incorporated by reference as if fully set forth herein.

48. From on or about December 2012 through the present, in the Western District of Texas, the Defendant, GEORGE MARIADAS KURUSU, did knowingly and with intent to defraud recruit, and solicit, persons outside the United States or caused another person to recruit, solicit, or hire a person outside the United States, or attempt to do so, for purposes of employment in the United States by means of materially false or fraudulent pretenses, representations or promises regarding that employment. All in violation of 18 U.S.C. § 1351(a).

**Count 13**
**(Tampering with a witness, victim or an informant)**
**18 U.S.C. § 1512(b)**

49. Paragraphs One through Forty-Six in Counts One through Eleven are incorporated by reference as if fully set forth herein.

50. On or about June 25, 2015, in the Western District of Texas, the Defendant, GEORGE MARIADAS KURUSU knowingly used intimidation, threatened or corruptly persuaded SSI and SRI with intent to hinder, delay or prevent the communication to a law enforcement officer of information relating to the commission of a Federal offense. All in violation of 18 U.S.C. § 1512(b).

**<u>Count 14</u>**
**(False Swearing in an Immigration Matter)**
**18 U.S.C. § 1546(b)**

51. Paragraphs One through Forty-Six in Counts One through Eleven are incorporated by reference as if fully set forth herein.

52. On or about June 26, 2013, in the Western District of Texas, and elsewhere, the Defendant, GEORGE MARIADAS KURUSU did knowingly subscribe as true under penalty of perjury under Title 28, United States Code Section 1746, a false statement with respect to a material fact in an application, to wit, an Online Nonimmigrant Visa Application, Form DS-160, that is, the Defendant KURUSU omitted he was working for and being compensated by Samaritan Educational Services, LLC, and he replied "No," to the question "Have you ever sought to obtain or assist others to obtain a visa, entry into the United States, or any other United States immigration benefit by fraud or willful misrepresentation or other unlawful means." These statements the defendant then and there knew were false, in that Defendant KURUSU did work for and was compensated by Samaritan Educational Services, an entity that had not petitioned KURUSU to work in the United States, and he did assist SSI and SRI and others to obtain a visa and entry into the United States by fraud and willful misrepresentation, in violation of 18 U.S.C. § 1546.

**NOTICE OF GOVERMNET'S DEMAND FOR FORFEITURE**
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))**

As a result of the offenses of Wire Fraud and Fraud in Foreign Labor Contracting set forth in Counts One though Thirteen of this Indictment, the United States of America gives notice to the Defendant,

**GEORGE MARIADAS KURUSU,**

of its intent to seek forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any and all property, real and personal, which constitutes or is derived from proceeds traceable to the violations, including but not limited to a sum of United States Currency representing the amount of proceeds obtained as a result of the offenses.

**SUBSTITUTE ASSETS**

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

**A TRUE BILL**

______________________________
**FOREPERSON**

**RICHARD L. DURBIN, JR.**
**UNITED STATES ATTORNEY**

______________________________
**JAMES J. MILLER, JR.**
**ASSISTANT UNITED STATES ATTORNEY**